UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

DAN GROPPER                                          **Docket: 1:16-cv-05377-RA**

                          Plaintiff,

        -against-                                  **AMENDED COMPLAINT**

160 EAST 48TH STREET OWNER II LLC AND AP & SS        **JURY TRIAL REQUESTED**
RESTAURANT GROUP LLC

                      Defendants.
------------------------------------------------------------------------x

## AMENDED COMPLAINT

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, plaintiff Dan Gropper (hereafter referred to as "plaintiff"), by counsel, Parker Hanski LLC, as and for the Amended Complaint in this action against defendants 160 East 48th Street Owner II LLC and AP & SS Restaurant Group LLC (together referred to as "defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.      This lawsuit opposes pervasive, ongoing and inexcusable disability discrimination by the defendants.  In this action, plaintiff seeks declaratory, injunctive and equitable relief, as well as monetary damages and attorneys' fees, costs and expenses to redress defendants' unlawful disability discrimination against plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et. seq.* and its implementing regulations, the New York State Executive Law (the "Executive Law"), § 296, New York State Civil Rights Law, § 40, and the Administrative Code of the City New York (the "Administrative Code"), § 8-107.  Plaintiff also alleges claims for Negligence.  As explained more fully below, defendants own, lease, lease to, operate and control a place of public accommodation that

1

violates the above-mentioned laws.  Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

2.     These defendants made a financial decision to ignore the explicit legal requirements for making their place of public accommodation accessible to persons with disabilities – all in the hopes that they would never be caught.  In so doing, defendants made a calculated, but unlawful, decision that disabled customers are not worthy.  The day has come for defendants to accept responsibility.  This action seeks to right that wrong via recompensing plaintiff and making defendants' place of public accommodation fully accessible so that plaintiff can finally enjoy the full and equal opportunity that defendants provide to non-disabled customers.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188 and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of plaintiff's rights under the ADA.  The Court has supplemental jurisdiction over plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because defendants' acts of discrimination alleged herein occurred in this district and defendants' place of public accommodation that is the subject of this action is located in this district.

## PARTIES

5.     At all times relevant to this action, plaintiff Dan Gropper has been and remains currently a resident of the State and City of New York.

6.     At all times relevant to this action, plaintiff Dan Gropper has been and remains a wheelchair user.  Plaintiff suffers from medical conditions that inhibit walking and restrict body motion range and movement.

7.     Defendant 160 East 48th Street Owner II LLC owns the property located at 158 East 48th Street in New York County, New York (hereinafter referred to as "158 East 48th Street").

8.     Defendant 160 East 48th Street Owner II LLC is licensed to and does business in New York State.  Defendant AP & SS Restaurant Group LLC is licensed to do and does business in New York State.

9.     At all relevant times, defendant AP & SS Restaurant Group LLC operates and/or leases property located at 158 East 48th Street from the defendant 160 East 48th Street Owner II LLC (hereinafter referred to as the "Seafire Grill" premises).

10.    Upon information and belief, 160 East 48th Street Owner II LLC and AP & SS Restaurant Group LLC have a written lease agreement.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

11.    Each of the defendants are public accommodations as they own, lease, lease to, control or operate a place of public accommodation, the Seafire Grill premises located at 158 East 48th Street, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)).

12.    The Seafire Grill premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)) as it is a facility operated by a private entity as a retail establishment, and its operations affect commerce.

13.	Numerous architectural barriers exist at defendants' place of public accommodation that prevent and/or restrict access to plaintiff, a person with a disability.

14.	Upon information and belief, 158 East 48th Street was designed and constructed for first possession after January 26, 1993.

15.	At some time after January 1992, defendants made alterations to 158 East 48th Street, including areas adjacent and/or attached to 158 East 48th Street.

16.	At some time after January 1992, defendants made alterations to the Seafire Grill premises, and to areas of 158 East 48th Street related to the Seafire Grill premises.

17.	At some time after January 1992, defendants altered the primary function areas of the Seafire Grill premises and 158 East 48th Street that relate to the Seafire Grill premises.

18.	Since the effective date of § 27-292 of the Administrative Code (also known as "Local Law 58"), defendants have constructed and/or made alterations to the Seafire Grill premises, and to areas of 158 East 48th Street related to the Seafire Grill premises.

19.	Within the past three years of filing this action, plaintiff attempted to and desired to access the Seafire Grill premises.

20.	The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design ("1991 Standards") or the revised final regulations implementing Title III of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design ("2010 Standards").

21.     The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Administrative Code § 27-292 *et. seq.*

22.     Because of defendants' failure to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, plaintiff was and has been unable to enjoy safe, equal and complete access to defendants' place of public accommodation.

23.     Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, the Administrative Code, the Building Code of the City of New York ("BCCNY"), or the 2014 New York City Construction Code ("2014 NYC").

24.     Barriers to access that plaintiff encountered and/or which deter plaintiff from patronizing the defendants' place of public accommodation as well as barriers that exist include, but are not limited to, the following:

I.      The public entrances are not accessible. **See items IV and X.**
*Defendants' fail to provide that at least 50 percent of all its public entrances are accessible. See 1991 Standards 4.1.3(8)(a)(i).*

II.     The public entrances are not accessible. **See items IV and X.**
*Defendants' fail to provide that at least 60% of all its public entrances are accessible.  See 2010 Standards 206.4.1.*

III.    The public entrances are not accessible. **See items IV and X.**
*Defendants' fail to provide that all of its public entrances are accessible. See 1968 NYC 27-292.5, 2008 NYC 1105.1 and 2014 NYC 1105.1.*

IV.     The exterior public entrance door has a door pull which requires tight grasping. The pull is only 1-5/8 inch deep making it difficult to open with a closed fist.
*Defendants' fail to provide door hardware that is accessible. See 1991 Standards 4.13.9, 2010 Standards 404.2.7, 2008 NYC 404.2.6 and 2014 NYC 404.2.6.*

*V.*　　The interior public entrance door has a door pull which requires tight grasping. The pull is only 1-3/4 inch deep making it difficult to open with a closed fist.

*Defendants' fail to provide door hardware that is accessible. See 1991 Standards 4.13.9, 2010 Standards 404.2.7, 2008 NYC 404.2.6 and 2014 NYC 404.2.6.*

*VI.*　　The interior public entrance door lacks level push side maneuvering clearances for a forward approach. Slopes up to 7.8% where measured within the push side maneuvering clearances.

*Defendants' fail to provide level maneuvering clearances for a forward approach at the push side of the door. See 1991 Standards 4.13.6, 2010 Standards 404.2.4, 1968 NYC 4.13.6, 2008 NYC 404.2.3, and 2014 NYC 404.2.3.*

VII.　　The ramp between the interior public entrance door and the main level has slopes in excess of 1:12 (8.33%).
The bottom-west side of the ramp slopes 15.5%.
The top-west side of the ramp slopes 26.3%.
The bottom-east side of the ramp slopes 14.0%.
The top-east side of the ramp slopes 12.9%.

*Defendants' fail to provide running slopes that are not steeper than 1:12 (8.33%) at accessible ramps. See 1991 Standards 4.8.2, 2010 Standards 405.2, 1968 NYC 4.8.2, 2008 NYC 405.2, and 2014 NYC 405.2.*

VIII.　　The ramp between the interior public entrance door and the main level has cross slopes in excess of 1:48 (2.00%).
The bottom-west side of the ramp has cross slopes of 10.9%.
The top-west side of the ramp has cross slopes of 6.3%.
The top-east side of the ramp has cross slopes of 6.3%.

*Defendants' fail to provide cross slopes that are not steeper than 1:48 (2.0%) at accessible ramps. See 1991 Standards 4.8.2, 2010 Standards 405.2, 1968 NYC 4.8.2, 2008 NYC 405.2, and 2014 NYC 405.2.*

IX.　　The ramp between the interior public entrance door and the main level lacks a level top landing due to the interior public entrance door.

*Defendants' fail to provide a level top landing at accessible ramps. See 1991 Standards 4.8.4, 2010 Standards 405.7, 1968 NYC 4.8.4, 2008 NYC 405.7, and 2014 NYC 405.7.*

X.　　The ramp between the interior public entrance door and the main level lacks a level bottom landing due to the coat check.

*Defendants' fail to provide a level bottom landing at accessible ramps. See 1991 Standards 4.8.4, 2010 Standards 405.7, 1968 NYC 4.8.4, 2008 NYC 405.7, and 2014 NYC 405.7.*

**Circulation Routes**

XI. The route to the private dining room has cross slopes in excess of 2.0%. The route slopes up to 6.3%.
*Defendants' fail to provide cross slopes that are not steeper than 1:48 (2.0%) at accessible routes. See 1991 Standards 4.3.7, 2010 Standards 403.3, 1968 NYC 4.3.7, 2008 NYC 403.3 and 2014 NYC 403.3.*

XII. The lower level is not provided with an accessible route due to steps. There is a 12-1/2 inch change in elevation at the steps.
*Defendants fail to provide an accessible route to each portion of the building that connects to accessible building entrances. See 1991 Standards 4.1.2(2), 2010 Standards 206.2.4, and 2014 NYC 1104.3. Defendants fail to provide an accessible route to each level and mezzanine required to be accessible. See 1991 Standards 4.1.3(5), 2010 Standards 206.2.3, and 2014 NYC 1104.4.*

XIII. There is no accessible routes around the tables in the private dining room. Only 23 inches was measured at the north side of the table, only 23-3/4 inches was measured at the east side of the table, and only 31-1/2 inches was measured at the north side of the table.
*Defendants' fail to provide an accessible route of at least 36 inches. See 1991 Standards 4.3.3, 2010 Standards 403.5.1, 1968 NYC 4.3.3, 2008 NYC 403.5 and 2014 NYC 403.5.*

XIV. There is no accessible routes between tables in the lower dining area. Only 28-1/2 inches to 32 inches was measured at the east side of the lower dining area. Only 27 inches to 28 inches was measured at the west side of the lower dining area.
*Defendants' fail to provide an accessible route of at least 36 inches. See 1991 Standards 4.3.3, 2010 Standards 403.5.1, 1968 NYC 4.3.3, 2008 NYC 403.5 and 2014 NYC 403.5.*

XV. There is no accessible routes between some of the tables in the main level dining area. Only 21 inches was measured at the north side around the column. Only 18 inches was measured at the east side around the column. Only 14 inches was measured at the south side around the column
*Defendants' fail to provide an accessible route of at least 36 inches. See 1991 Standards 4.3.3, 2010 Standards 403.5.1, 1968 NYC 4.3.3, 2008 NYC 403.5 and 2014 NYC 403.5.*

**Men's Public Toilet Room**

XVI. The door lacks sufficient push side maneuvering clearances. Only

40-3/4 inches was measured perpendicular to the door at the push side of the doorway due to the wall.

*Defendants' fail to provide an accessible door with sufficient maneuvering clearances. See 1991 Standards 4.13.6, 2010 Standards 404.2.4, 1986 NYC 4.13.6, 2008 NYC 404.2.3 and 2014 NYC 404.2.3.*

XVII.    The door lacks sufficient pull side maneuvering clearances. Only 1-1/4 inches was measured parallel to the door beyond the latch at the pull side of the doorway due to the wall.

*Defendants' fail to provide an accessible door with sufficient maneuvering clearances. See 1991 Standards 4.13.6, 2010 Standards 404.2.4, 1986 NYC 4.13.6, 2008 NYC 404.2.3 and 2014 NYC 404.2.3.*

XVIII.    There is a 1/2 inch (3/8 inch vertical and 1/8 inch bevel) change in level at the exterior side of the door threshold.

*Defendants' fail to provide that changes in level greater than 1/2 inch high are ramped. See 1991 Standards 4.3.8, 2010 ADA 303.4, 2008 NYC 303.4 and 2014 NYC 303.4.*

Defendants' fail to provide at interior doors that changes in level greater than 1 inch shall be accomplished by means of an accessible ramp. See 1968 NYC 4.5.2.

XIX.    The toilet room does not have an accessible toilet compartment. One (1) total toilet compartments is provided, but it is not of sufficient size to be accessible and accommodate an individual in a wheelchair. See item 020.

*Defendants' fail to provide an accessible toilet compartment. Where toilet compartments are provided, at least one toilet compartment shall be accessible. See 1991 Standards 4.23.4, 2010 Standards 213.3.1, 1968 NYC 4.17.1, 2008 NYC 1109.2.2 and 2014 NYC 1109.2.2.*

XX.    Only 32-1/2 inches was measured perpendicular from the side of the water closet.

*Defendants fail to provide a clearance around the accessible water closet that is 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall. See 1991 Standards 4.17.3, 2010 Standards 604.3.1, 1968 NYC 4.16.3, 2008 NYC 604.3.1 and 2014 NYC 604.3.1.*

XXI.    The flush control is located on the closed side of the water closet.

*Defendants fail to provide an accessible water closet with a flush control located on the open side of the water closet. See 1991 Standards 4.16.5, 2010 Standards 604.6, 1986 NYC 4.16.5, 2008 NYC 604.6 and 2014 NYC 604.6.*

XXII.    The water closet lacks correct grab bars. The side wall grab bar is

only 36 inches long and is located 38 inches from the rear wall of the water closet. The rear wall grab bar is only 18 inches long. There is no vertical side wall grab bar.

*Defendants fail to provide correct rear wall grab bar. The side wall grab bar shall be 42 inches long minimum, located 12 inches maximum from the rear wall and extending 54 inches minimum from the rear wall. Grab bars shall be 33 inches to 36 inches above the finish floor. The rear wall grab bar shall be 36 inches long minimum and extend from the centerline of the water closet 12 inches minimum on one side and 24 inches minimum on the other side. See 1991 Standards 4.17.6, 2010 Standards 604.5, 1968 NYC 4.17.6, 2008 NYC 604.5 and 2014 NYC 604.5*

XXIII. The mirror above the lavatory is 44-5/8 inches above the finish floor.
*Defendants' fail to provide that mirrors located above the lavatories are installed with the bottom edge of the reflecting surface 40 inches maximum above the finish floor. See 1991 Standards 4.19.2, 2010 Standards 603.3, 1968 NYC 4.19.6, 2008 NYC 603.3 and 2014 NYC 603.3.*

XXIV. The coat hook is 65-1/4 inches above the finish floor.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, 1986 NYC 4.2, 2008 NYC 308.3.1 and 2014 NYC 308.3.1.*

## Women's Public Toilet Room

XXV. The door lacks sufficient push side maneuvering clearances. Only 4-1/2 inches was measured parallel to the door at the push side of the doorway due to the adjacent wall and door.
*Defendants' fail to provide an accessible door with sufficient maneuvering clearances. See 1991 Standards 4.13.6, 2010 Standards 404.2.4, 1986 NYC 4.13.6, 2008 NYC 404.2.3 and 2014 NYC 404.2.3.*

XXVI. The door lacks sufficient pull side maneuvering clearances. Only 13-3/4 inches was measured parallel to the door beyond the latch at the pull side of the doorway due to the wall.
*Defendants' fail to provide an accessible door with sufficient maneuvering clearances. See 1991 Standards 4.13.6, 2010 Standards 404.2.4, 1986 NYC 4.13.6, 2008 NYC 404.2.3 and 2014 NYC 404.2.3.*

XXVII. There is a 1/2 inch (3/8 inch vertical and 1/8 inch bevel) change in level at the exterior side of the door threshold.
*Defendants' fail to provide that changes in level greater than 1/2 inch high are ramped. See 1991 Standards 4.3.8, 2010 ADA 303.4, 2008 NYC 303.4 and 2014 NYC 303.4.*

Defendants' fail to provide at interior doors that changes in level greater than 1 inch shall be accomplished by means of an accessible ramp. See 1968 NYC 4.5.2.

XXVIII.    The toilet room does not have an accessible toilet compartment. Two (2) total toilet compartments are provided. One is larger than the other, but neither is of sufficient size to be accessible and accommodate an individual in a wheelchair. See item 029.
*Defendants' fail to provide an accessible toilet compartment. Where toilet compartments are provided, at least one toilet compartment shall be accessible. See 1991 Standards 4.23.4, 2010 Standards 213.3.1, 1968 NYC 4.17.1, 2008 NYC 1109.2.2 and 2014 NYC 1109.2.2.*

XXIX.    Only 48 inches was measured perpendicular from the side of the water closet.
*Defendants fail to provide a clearance around the accessible water closet that is 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall. See 1991 Standards 4.17.3, 2010 Standards 604.3.1, 1968 NYC 4.16.3, 2008 NYC 604.3.1 and 2014 NYC 604.3.1.*

XXX.    The door to the larger toilet compartment is obstructed by the lavatory. Only 24 inches is provided between the lavatory and the door opening.
*Defendants fail to provide a toilet compartment door that provides a clear width of 32 inches minimum. See 1991 Standards 4.17.5, 2010 Standards 604.8.1.2, 1986 NYC 4.17.4, 2008 NYC 604.9.3 and 2014 NYC 604.9.3.*

XXXI.    The flush control is located on the closed side of the water closet.
*Defendants fail to provide an accessible water closet with a flush control located on the open side of the water closet. See 1991 Standards 4.16.5, 2010 Standards 604.6, 1986 NYC 4.16.5, 2008 NYC 604.6 and 2014 NYC 604.6.*

*XXXII.*    The water closet lacks correct grab bars. No side wall grab bars are provided. The rear wall grab bar is only 18 inches long.
*Defendant fails to provide correct rear wall grab bar. The side wall grab bar shall be 42 inches long minimum, located 12 inches maximum from the rear wall and extending 54 inches minimum from the rear wall. Grab bars shall be 33 inches to 36 inches above the finish floor. The rear wall grab bar shall be 36 inches long minimum and extend from the centerline of the water closet 12 inches minimum on one side and 24 inches minimum on the other side. See 1991 Standards 4.17.6, 2010 Standards 604.5, 1968 NYC 4.17.6, 2008 NYC 604.5 and 2014 NYC 604.5*

*XXXIII.*    The mirror above the lavatory is 46-1/8 inches above the finish

floor.

*Defendants' fail to provide that mirrors located above the lavatories are installed with the bottom edge of the reflecting surface 40 inches maximum above the finish floor. See 1991 Standards 4.19.2, 2010 Standards 603.3, 1968 NYC 4.19.6, 2008 NYC 603.3 and 2014 NYC 603.3.*

XXXIV.    The coat hook is 65-1/2 inches above the finish floor.

*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, 1986 NYC 4.2, 2008 NYC 308.3.1 and 2014 NYC 308.3.1.*

XXXV.    The room does not provide a 60 inch turning space.
Only 48-1/4 inches was measured between the toilet compartments and the opposite wall. This is further reduced by a trash receptacle.

*Defendants fail to provide the required turning space within accessible toilet and bathing facilities. See 1991 Standards 4.23.3, 2010 Standards 603.2.1, 1986 NYC 4.22.3, 2008 NYC 603.2.1 and 2014 NYC 603.2.1.*

## Seating

XXXVI.    None of the dining surfaces (tables or bars) are accessible.

*Defendants' fail to provide that at least 5 percent of the seating spaces and standing spaces at dining surfaces are accessible. See 1991 Standards 5.1, 2010 Standards 226.1, 1968 NYC 27-292.10(3), 2008 NYC 1109.11 and 2014 NYC 1109.10.*

XXXVII.    1 bar for seating and standing is provided. 11 bar stools were provided at the time of the inspection. The bar is 42 inches above the finish floor (42-3/4 inches above the finish floor if you include the decorative bar lip).

*Defendants' fail to provide a 30 inch minimum by 48 inch minimum clear floor space positioned for a forward approach at accessible dining surfaces. Knee clearance shall extend 11 inches deep minimum at 9 inches above the finish floor and 8 inches deep minimum at 27 inches above the finish floor. Toe clearance shall extend 17 inches minimum under the dining surface. The tops of dining surfaces shall be 28 inches minimum and 34 inches maximum above the finish floor. See 1991 Standards 4.32, 2010 Standards 902.1, 1968 NYC 4.30.2, 2008 NYC 902.1 and 2014 NYC 902.1.*

None of the dining surfaces are labeled with the International Symbol of Accessibility.

XXXVIII.    13 high dining surfaces are provided. All the high dining surfaces are 43 inches to 43-1/2 inches  above the finish floor.

*Defendants' fail to provide a 30 inch minimum by 48 inch minimum clear floor space positioned for a forward approach at accessible dining*

*surfaces. Knee clearance shall extend 11 inches deep minimum at 9 inches above the finish floor and 8 inches deep minimum at 27 inches above the finish floor. Toe clearance shall extend 17 inches minimum under the dining surface. The tops of dining surfaces shall be 28 inches minimum and 34 inches maximum above the finish floor. See 1991 Standards 4.32, 2010 Standards 902.1, 1968 NYC 4.30.2, 2008 NYC 902.1 and 2014 NYC 902.1.*

None of the dining surfaces are labeled with the International Symbol of Accessibility.

XXXIX.   30 two-top dining surfaces are provided. The two-top table dining surfaces have a pedestal that obstructs knee and toe clearances. The pedestal is only 13-1/2 inches from the edge of the table.  This is further reduced by the feet of the pedestal which are 9-1/2 inches deep.

8 four-top dining surfaces are provided. The four-top table dining surfaces have a pedestal that obstructs knee and toe clearances. The pedestal is only 15-7/8 inches from the edge of the table.  This is further reduced by the feet of the pedestal which are 15-1/2 inches deep.

4 six-top dining surfaces are provided. The six-top table dining surfaces have a pedestal that obstructs knee and toe clearances. The pedestal is only 22-3/4 inches from the edge of the table.  This is further reduced by the feet of the pedestal which are 15-1/2 inches deep.

*Defendants' fail to provide a 30 inch minimum by 48 inch minimum clear floor space positioned for a forward approach at accessible dining surfaces. Knee clearance shall extend 11 inches deep minimum at 9 inches above the finish floor and 8 inches deep minimum at 27 inches above the finish floor. Toe clearance shall extend 17 inches minimum under the dining surface. The tops of dining surfaces shall be 28 inches minimum and 34 inches maximum above the finish floor. See 1991 Standards 4.32, 2010 Standards 902.1, 1968 NYC 4.30.2, 2008 NYC 902.1 and 2014 NYC 902.1.*

None of the dining surfaces are labeled with the International Symbol of Accessibility.

*XL.*   The dining surface in the private dining room is not accessible.

One (1) large table is provided which is made up of 4 four-top tables similar to those found in the general dining area. The four-top table dining surfaces have a pedestal that obstructs knee and toe clearances. The pedestal is only 15-7/8 inches from the edge of the table.  This is further reduced by the feet of the pedestal which are 15-1/2 inches deep.

*Defendants' fail to provide a 30 inch minimum by 48 inch minimum clear floor space positioned for a forward approach at accessible dining surfaces. Knee clearance shall extend 11 inches deep minimum at 9 inches above the finish floor and 8 inches deep minimum at 27 inches above the finish floor. Toe clearance shall extend 17 inches minimum under the dining surface. The tops of dining surfaces shall be 28 inches minimum*

*and 34 inches maximum above the finish floor. See 1991 Standards 4.32, 2010 Standards 902.1, 1968 NYC 4.30.2, 2008 NYC 902.1 and 2014 NYC 902.1.*
None of the dining surfaces are labeled with the International S Symbol of Accessibility.

**Other**

XLI.    The coat check counter is 43-1/4 inches above the finish floor.
*Defendants' fail to provide an accessible service counter. Where service counters are provided, they shall be accessible. A portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor shall be provided. See 1991 Standards 7.2(2), 2010 Standards 227.1 and 904.4.1, 1968 NYC 27-292.10, 2008 NYC 1109.12.3 and 904.3.1 and 2014 NYC 1109.11.3 and 904.3.1.*

*XLII.*    The clear floor space at the coat check counter is not level and slopes up to 5.7%.
*Defendants' fail to provide a clear floor or ground space at service counters that are 30 inches minimum by 48 inches minimum. Slopes not steeper than 1:48 shall be permitted at clear floor or ground spaces. See 1991 Standards 4.2.4, 2010 Standards 305, 1968 NYC 4.2.4, 2008 NYC 305 and 2014 NYC 305.*

XLIII.    The host counter is 42-3/8 inches above the finish floor.
*Defendants' fail to provide an accessible service counter. Where service counters are provided, they shall be accessible. A portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor shall be provided. See 1991 Standards 7.2(2), 2010 Standards 227.1 and 904.4.1, 1968 NYC 27-292.10, 2008 NYC 1109.12.3 and 904.3.1 and 2014 NYC 1109.11.3 and 904.3.1.*

*XLIV.*    The clear floor space at the host counter is not level and slopes up to 3.8%.
*Defendants' fail to provide a clear floor or ground space at service counters that are 30 inches minimum by 48 inches minimum. Slopes not steeper than 1:48 shall be permitted at clear floor or ground spaces. See 1991 Standards 4.2.4, 2010 Standards 305, 1968 NYC 4.2.4, 2008 NYC 305 and 2014 NYC 305.*

XLV.    The left leaf of the double door leading to the private dining room is only 20-3/16 inches wide. The right leaf of the double door leading to the private dining room is only 20-1/8 inches wide.
*Defendants' fail to provide both leaves at double leaf doors with at least 32 inches of clear opening width. See 1991 Standards 4.13.5, 2010*

*Standards 404.2.3, 1968 NYC 4.13.5, 2008 NYC 402.2.2 and 2014 NYC 404.2.2.*

XLVI.  The doors leading to the private dining room have door pulls which requires tight grasping and twisting of the wrists.
*At interior doors, Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 Standards 4.13.9; 2010 Standards 404.2.7; and 2014 NYC ANSI/A117.1 - 2009 404.2.6.*

**Exits**

XLVII.  The exit doors are not accessible. See items 001 to 003, and below. The lower level courtyard exit door is very difficult to open.
*Defendants fail to provide accessible means of egress in the number required by the code. See 1991 Standards 4.1.3(9), 2010 Standards 207.1, 1986 NYC 27-292.4(2), 2008 NYC 1007.1 and 2014 NYC 1007.1.*

XLVIII.  There are steps which are in excess of ½ inch at the interior side of the lower level courtyard exit.  A total change in elevation of 13 inches was measured at the step.
*Defendants' fail to provide that changes in level greater than 1/2 inch high are ramped. See 1991 Standards 4.3.9, 2010 ADA 303.4, 2008 NYC 303.4 and 2014 NYC 303.4.*
Defendants' fail to provide at interior doors that changes in level greater than 1 inch shall be accomplished by means of an accessible ramp. See 1968 NYC 4.5.2.

XLIX.  There is a step which is in excess of ½ inch at the exterior side of the lower level courtyard exit.  A total change in elevation of 4 inches was measured at the step.
*Defendants' fail to provide that changes in level greater than 1/2 inch high are ramped. See 1991 Standards 4.3.9, 2010 ADA 303.4, 2008 NYC 303.4 and 2014 NYC 303.4.*
Defendants' fail to provide at interior doors that changes in level greater than 1 inch shall be accomplished by means of an accessible ramp. See 1968 NYC 4.5.2.

L.  There is a 1-3/16 inch change in level at the interior side of the lower level courtyard exit door threshold.
*Defendants' fail to provide that changes in level greater than 1/2 inch high are ramped. See 1991 Standards 4.3.8, 2010 ADA 303.4, 2008 NYC 303.4 and 2014 NYC 303.4.*

Defendants' fail to provide at interior doors that changes in level greater than 1 inch shall be accomplished by means of an accessible ramp. See 1968 NYC 4.5.2.

LI.     The door is only 26-1/2 inches wide measured between the face of the door and the stop, with the door open 90 degrees, due to the fire extinguisher.
*Defendants' fail to provide doors with at least 32 inches of clear opening width. See 1991 Standards 4.13.5, 2010 Standards 404.2.3, 1968 NYC 4.13.5, 2008 NYC 402.2.2 and 2014 NYC 404.2.2.*

25.     Defendants have endangered plaintiff's safety and denied plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

26.     Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures for persons with disabilities are compliant with the laws. Nor have defendants made or provided reasonable accommodations or modifications to persons with disabilities.

27.     Defendant 160 East 48th Street Owner II LLC has failed to ensure that its lessee's place of public accommodation and the elements therein are in compliance with the 1991 Standards or the 2010 Standards; the Administrative Code, and the BCCNY and 2014 NYC including but not limited to ensuring the maintenance of accessible features.

28.     Plaintiff has a realistic, credible and continuing threat of discrimination from the defendants' non-compliance with the laws prohibiting disability discrimination. The barriers to access within defendants' place of public accommodation continue to exist and deter plaintiff.

29.     Plaintiff frequently travels to the area where defendants' place of public accommodation is located.

30.     Plaintiff intends to patronize the defendants' place of public accommodation several times a year after it becomes fully accessible and compliant with the 1991 Standards or

the 2010 Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY and 2014 NYC.

31.     Plaintiff is also a "tester" for the purposes of asserting basic civil rights and monitoring, ensuring, and determining whether defendants' place of public accommodation is fully accessible and compliant with the 1991 Standards or the 2010 Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY and 2014 NYC.

32.     Plaintiff intends to patronize the defendants' place of public accommodation several times a year as "tester" to monitor, ensure, and determine whether defendants' place of public accommodation is fully accessible and compliant with the 1991 Standards or the 2010 Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY and 2014 NYC – all for the benefit of those similarly situated to plaintiff.

## FIRST CAUSE OF ACTION
**(VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)**

33.     Plaintiff realleges and incorporates by reference all allegations set forth in this Amended Complaint as if fully set forth herein.

34.     Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of plaintiff's disability, plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

35.     The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation.  28 C.F.R. 36.201(b).

36.     Under the ADA, both the property owner and lessee are liable to the plaintiff and neither can escape liability by transferring their obligations to the other by contract (i.e. lease agreement).  28 C.F.R. 36.201(b).

37.     Defendants have and continue to subject plaintiff to disparate treatment by denying plaintiff full and equal opportunity to use their place of public accommodation all because plaintiff is disabled.  Defendants' policies and practices have disparately impacted plaintiff as well.

38.     By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

39.     Defendants have discriminated against the plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

40.     Defendants' place of public accommodation is not fully accessible and fails to provide an integrated and equal setting for the disabled, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

41.     Upon making alterations to their public accommodation, defendants failed to make their place of public accommodation accessible to plaintiff to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406.

42.     Upon making these alterations to the primary function areas, defendants failed to make the paths of travel to the primary function areas accessible to plaintiff, in violation of 28 C.F.R. § 36.403.

43.     28 C.F.R. § 36.406(5) requires defendants to make the facilities and elements of their noncomplying public accommodation accessible in accordance with the 2010 Standards.

44.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304. It would be readily achievable to make defendants' place of public accommodation fully accessible.

45.     By failing to remove the barriers to access where it is readily achievable to do so, defendants have discriminated against plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

46.     In the alternative, defendants have violated the ADA by failing to provide plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

47.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

48.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk. As a result, within the meaning of the ADA, 160 East 48th Street Owner II LLC continuously controlled, managed and operated the public sidewalk abutting 158 East 48th Street, which includes the portion of the sidewalk constituting the entrance to defendants' place of public accommodation.

49.     160 East 48th Street Owner II LLC's failure to construct and maintain an accessible entrance from the public sidewalk to defendants' place of public accommodation constitutes disability discrimination in a violation of the ADA.

50.     Defendants have and continue to discriminate against plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

## SECOND CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE EXECUTIVE LAW)

51.     Plaintiff realleges and incorporates by reference all allegations set forth in this Amended Complaint as if fully set forth herein.

52.     Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions in plaintiff; in particular, the life activities of both walking and body motion range.  Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 296(21).

53.     Defendants' have and continue to subject plaintiff to disparate treatment by denying plaintiff equal opportunity to use their place of public accommodation all because plaintiff is disabled.

54.     Defendants discriminated against plaintiff in violation of New York State Executive Law § 296(2), by maintaining and/or creating an inaccessible place of public accommodation.  Each of the defendants have aided and abetted others in committing disability discrimination.

55.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law § 296(2)(c)(iii).

56.     In the alternative, defendants have failed to provide plaintiff with reasonable alternatives to barrier removal as required in violation of Executive Law § 296(2)(c)(iv).

57.     It would be readily achievable to make defendants' place of public accommodation fully accessible.

58.     It would not impose an undue hardship or undue burden on defendants to make their place of public accommodation fully accessible.

59.     As a direct and proximate result of defendants' unlawful discrimination in violation of New York State Executive Law, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

60.     Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(VIOLATIONS OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK)**

61.     Plaintiff realleges and incorporates by reference all allegations set forth in this Amended Complaint as if fully set forth herein.

62.     Plaintiff suffers from various medical conditions that separately and together, impair plaintiff's bodily systems - in particular, the life activity of both walking and body motion range -and thus plaintiff has a disability within the meaning of the Administrative Code § 8-102(16).

63.     The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the New York City's Human Rights Law.  The Restoration Act confirmed the legislative intent to abolish "parallelism" between the Administrative Code and the Federal and New York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be *construed liberally* for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act § 7 amending Administrative Code §8-130 (emphasis added). The Restoration Act is to be construed broadly in favor of plaintiff to the fullest extent possible.

64.     Defendants' have and continue to subject plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the Administrative Code § 8-107(4).  Each of the defendants have aided and abetted others in committing disability discrimination.

65.     Defendants have discriminated, and continue to discriminate, against plaintiff in violation of the Administrative Code § 8-107(4) by designing, creating and/or maintaining an inaccessible commercial facility/space.

66.     Defendants have subjected, and continue to subject, plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the Administrative Code § 8-107(4).

67.     In violation of Administrative Code § 8-107(6), defendants have and continue to, aid and abet, incite, compel or coerce each other in each of the other defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the Administrative Code.

68.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, 160 East 48th Street Owner II LLC continuously controlled, managed and operated the public sidewalk abutting 158 East 48th Street, which includes the portion of the sidewalk constituting the entrance to defendants' place of public accommodation.

69.	160 East 48th Street Owner II LLC's failure to construct and maintain an accessible entrance from the public sidewalk to defendants' place of public accommodation constitutes disability discrimination in a violation of the Administrative Code.

70.	Defendants discriminated against plaintiff in violation of the Administrative Code, § 8-107(4), and Local Law 58 by maintaining and/or creating an inaccessible public accommodation.

71.	As a direct and proximate result of defendants' unlawful discrimination in violation of the Administrative Code, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, embarrassment, and anxiety.

72.	Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to plaintiff's rights under the Administrative Code.

73.	By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

74.	Defendants' unlawful discriminatory conduct constitutes malicious, willful and wanton violations of the Administrative Code for which plaintiff is entitled to an award of punitive damages.  Administrative Code § 8-502.

75.	By refusing to make their place of public accommodation accessible, defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.  Defendants' unlawful profits plus interest must be disgorged.

76.     Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

77.     Plaintiff realleges and incorporates by reference all allegations set in this Amended Complaint as if fully set forth herein.

78.     Defendants discriminated against plaintiff pursuant to New York State Executive Law.

79.     Consequently, plaintiff is entitled to recover the monetary penalty prescribed by Civil Rights Law §§ 40-c and 40-d for each and every barrier and violation.

80.     Notice of the defendants' violations and this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## FIFTH CAUSE OF ACTION
### (COMMON LAW NEGLIGENCE)

81.     Plaintiff realleges and incorporates by reference all allegations set in this Amended Complaint as if fully set forth herein.

82.     Defendants negligently designed, constructed, operated, repaired and maintained their place of public accommodation located at 158 East 48th Street in a manner that has rendered their place of public accommodation unsafe to the disabled plaintiff.

83.      At all relevant times, defendants, who hold their property open to the public, have had a duty to patrons such as plaintiff to design, construct, operate, repair, and maintain their place of public accommodation located at 158 East 48th Street in a reasonably safe condition, including a duty to comply with the Administrative Code.

84. Defendants breached their duty by negligently designing, constructing, operating, repairing and maintaining their place of public accommodation located at 158 East 48th Street in a manner that has unreasonably endangered the plaintiff's physical safety and caused plaintiff to fear for plaintiff's own safety.

85. Defendants' failure to design, construct, operate, repair and maintain their place of public accommodation located at 158 East 48th Street in a manner that is safe to the disabled plaintiff has proximately caused plaintiff emotional distress.

86. Defendants have had actual and constructive notice that their place of public accommodation located at 158 East 48th Street is not safe to the disabled.

87. As a direct result of defendants' negligence, plaintiff has suffered and continues to suffer emotional distress damages in an amount to be determined at trial.

## INJUNCTIVE RELIEF

88. Plaintiff will continue to experience unlawful discrimination as a result of defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief is necessary to order defendants to alter and modify their place of public accommodation and their operations, policies, practices and procedures.

89. Injunctive relief is also necessary to make defendants' facilities readily accessible to and usable by plaintiff in accordance with the above-mentioned laws.

90. Injunctive relief is further necessary to order defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, Executive Law and the Administrative Code.

## DECLARATORY RELIEF

91.     Plaintiff is entitled to a declaratory judgment concerning each of the accessibility violations committed by defendants against plaintiff and as to required alterations and modifications to defendants' place of public accommodation, facilities, goods and services, and to defendants' policies, practices, and procedures.

## ATTORNEYS' FEES, EXPENSES AND COSTS

92.     In order to enforce plaintiff's rights against the defendants, plaintiff has retained counsel and is entitled to recover attorneys' fees, expenses and costs pursuant to the ADA and the Administrative Code.  42 U.S.C. §12205; 28 C.F.R. §36.505; and Administrative Code § 8-502.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court enter a judgment against the defendants, jointly and severally, in favor of plaintiff that contains the following relief:

A.  Enter declaratory judgment declaring that defendants' have violated the ADA and its implementing regulations, Executive Law and Administrative Code and declaring the rights of plaintiff as to defendants' place of public accommodation, and defendants' policies, practices and procedures;

B.  Issue a permanent injunction ordering **defendants to close and cease all business** until defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, Executive Law and Administrative Code, including but not limited to the violations set forth above;

C.   Retain jurisdiction over the defendants until the Court is satisfied that the defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

D.   Award plaintiff compensatory damages as a result of defendants' violations of New York State Executive Law and the Administrative Code of the City of New York;

E.   Award plaintiff punitive damages in order to punish and deter the defendants for their violations of the Administrative Code of the City of New York;

F.   Award plaintiff monetary damages for each and every barrier and violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

G.   Award reasonable attorneys' fees, costs and expenses pursuant to the Administrative Code;

H.   Find that plaintiff is a prevailing party in this litigation and award reasonable attorneys' fees, costs and expenses pursuant to the ADA; and

I.   For such other and further relief, at law or in equity, to which plaintiff may be justly entitled.

Dated: April 7, 2017
         New York, New York

Respectfully submitted,

**PARKER HANSKI LLC**

By:____/s_____
         Glen H. Parker, Esq.
         Adam S. Hanski, Esq.
         Robert G. Hanski, Esq.
         Attorneys for Plaintiff
         40 Worth Street, 10th Floor
         New York, New York 10013
         Telephone: (212) 248-7400
         Facsimile: (212) 248-5600
         Email:ash@parkerhanski.com
         Email:ghp@parkerhanski.com
         Email:rgh@parkerhanski.com